UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

2015 APR 23 ⊃ 4:24

US DISTRICT COURT
HARTFORD CT

- - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA          :     CRIMINAL NO. 3:15CR 61 (RNC)

                                  :

        - v. -                    :

                                  :

DEUTSCHE BANK AG                  :

               Defendant.         :

- - - - - - - - - - - - - - - x

## DEFERRED PROSECUTION AGREEMENT

Defendant, Deutsche Bank AG ("Deutsche Bank"), by its undersigned representatives, pursuant to authority granted by Deutsche Bank's Management Board, and the United States Department of Justice, Criminal Division, Fraud Section and Antitrust Division (together, the "Department"), enter into this Deferred Prosecution Agreement (the "Agreement"). The terms and conditions of this Agreement are as follows:

### Criminal Information and Acceptance of Responsibility

1.     Deutsche Bank acknowledges and agrees that the Department will file the attached two-count criminal Information in the United States District Court for the District of Connecticut charging Deutsche Bank with one count of wire fraud, in violation of Title 18, United States Code, Section 1343, and one count of price-fixing, in violation of the Sherman Act,

Title 15, United States Code, Section 1.  In so doing, Deutsche Bank: (a) knowingly waives its right to indictment on these charges, as well as all rights to a speedy trial pursuant to the Sixth Amendment to the United States Constitution, Title 18, United States Code, Section 3161, and Federal Rule of Criminal Procedure 48(b); and (b) knowingly waives, for purposes of this Agreement and any charges by the United States arising out of the conduct described in the attached Statement of Facts, any objection with respect to venue, and consents to the filing of the Information, as provided under the terms of this Agreement, in the United States District Court for the District of Connecticut.

2.    Deutsche Bank admits, accepts, and acknowledges that it is responsible under United States law for the acts of its officers, directors, employees, and agents as charged in the Information, and as set forth in the Statement of Facts attached hereto as Attachment A and incorporated by reference into this Agreement, and that the allegations described in the Information and the facts described in Attachment A are true and accurate. Should the Department pursue the prosecution that is deferred by this Agreement, Deutsche Bank agrees that it will neither contest the admissibility of, nor contradict, the Statement of Facts in any such proceeding, including any guilty plea or

sentencing proceeding.  Neither this Agreement, Attachment A, nor the criminal Information is a final adjudication of the matters addressed in such documents.

## Term of the Agreement

3.    This Agreement is effective for a period beginning on the date on which the Information is filed by the Court and ending three (3) years from that date (the "Term").  However, Deutsche Bank agrees that, in the event that the Department determines, in its sole discretion, that Deutsche Bank has knowingly violated any provision of this Agreement, an extension or extensions of the term of the Agreement may be imposed by the Department, in its sole discretion, for up to a total additional time period of one year, without prejudice to the Department's right to proceed as provided in Paragraphs 13-16 below.  Any extension of the Agreement extends all terms of this Agreement, including the terms of the monitorship in Attachment C, for an equivalent period.  Conversely, in the event the Department finds, in its sole discretion, that there exists a change in circumstances sufficient to eliminate the need for the monitorship in Attachment C, and that the other provisions of this Agreement have been satisfied, this Term of the Agreement may be terminated early.

## Relevant Considerations

4.    The Department enters into this Agreement based on the individual facts and circumstances presented by this case. Among the facts considered were the following:

a.    Deutsche Bank has not been the subject of a criminal enforcement action by the Department regarding similar misconduct.  Although Deutsche Bank did not self-disclose this misconduct, upon being alerted to an investigation by the Department and other regulatory authorities, Deutsche Bank commenced an internal investigation and cooperated with authorities, including disclosing much of the misconduct described in the Information and Statement of Facts.  Deutsche Bank collected, analyzed, and organized voluminous evidence, data, and information, and did so in a way that saved the Department significant resources by identifying certain documents and segments of audio files and providing translations for certain documents where applicable.  Deutsche Bank also assisted and facilitated the Department's interviews of current and former employees, including foreign employees and Deutsche Bank communicated with and updated the Department with increasing frequency as the investigation progressed.

b.    Although Deutsche Bank's cooperation was often helpful, Deutsche Bank's cooperation also fell short in some

4

important respects.  First, Deutsche Bank was slow to cooperate fully with the Department's investigation.  For example, Deutsche Bank did not timely produce certain information, including key information related to Deutsche Bank's Euro traders.  As another example, in a telephone conversation, two executive level managers discussed knowing that the Department asked for relevant information and that the information had been withheld from the Department and other U.S. authorities while acknowledging they probably would have to give the information to the European Union.  Second, Deutsche Bank was not, by comparison to previously settling institutions, proactive in its investigation and disclosure.  For example, Deutsche Bank's conduct included interbank coordination between it and other institutions, but it was the other institutions, not Deutsche Bank, that provided that information to the Department.  Third, Deutsche Bank's investigation was hampered by numerous unintentional but significant mistakes in the preservation, collection, and production of documents, audio, and data.  For example, Deutsche Bank destroyed thousands of hours of potentially responsive audio recordings due to the negligent execution of certain discovery holds.  As another example, Deutsche Bank discovered an important communications platform more than two years after receiving the Department's initial

5

request for information, which platform contained some of the
most explicit documents.  Fourth, Deutsche Bank caused the
Department to be misinformed that the bank was not permitted to
provide to the Department a report by Deutsche Bank's primary
domestic regulator, BaFin, that discussed shortcomings in
Deutsche Bank's internal investigation of IBOR related
misconduct.  Despite these shortcomings, Deutsche Bank's
cooperation improved markedly over time.

        c.   Deutsche Bank has significantly expanded and
enhanced its legal and regulatory compliance program and has
taken extensive steps to remediate the misconduct that is the
subject of this investigation.  The remedial actions that
Deutsche Bank has taken or is taking include:  (i) adopting the
undertakings that the U.S. Commodity Futures Trading Commission
("CFTC") required of Barclays as a part of its resolution for
similar misconduct; (ii) separating from, or disciplining,
individuals involved in the misconduct at Deutsche Bank; (iii)
addressing conflicts of interest for IBOR submitters;(iv)
adopting robust systems, controls, and policies related to
interest rate benchmark submission processes, based on industry
best practices and guidance from the CFTC, the United Kingdom
Financial Conduct Authority ("FCA"), the British Bankers'
Association ("BBA"), and the European Banking Federation

("EBF"); (v) creating and instituting an auditing program which calculates a default submission number, tracks submissions, and records the submitter's changes and reasons for those changes (vi) adding more than 500 employees to compliance, risk, and related technology; (vii) eliminating percentage based bonuses for traders; and (viii) implementing upgraded technology in order to better retain records and respond to future investigations.  Deutsche Bank has further agreed to an Independent Compliance and Ethics Monitor to aid in the enhancement and implementation of its compliance and ethics programs.

   d.   ·The misconduct identified in the attached Information and Statement of Facts took place primarily within Deutsche Bank's Global Finance and Foreign Exchange business unit ("GFFX"), which employed approximately 300 to 400 of the bank's approximately 100,000 employees.  In total, approximately 30 members of GFFX, including desk level managers, a mid-level manager, and one senior manager, were, to varying degrees, involved in the misconduct related to interest rate benchmark submissions.

   e.   Deutsche Bank has agreed to continue to cooperate with the Department in any ongoing investigation of the conduct of Deutsche Bank and its current and former officers, directors,

employees and agents relating to manipulation, attempted manipulation, or interbank coordination of benchmark rate submissions, or additional conduct, as provided in Paragraphs 5-6 below. And significant remedies and sanctions are also being imposed on Deutsche Bank by several regulators.

5.   Deutsche Bank shall continue to cooperate fully with the Department in any and all matters relating to the conduct described in this Agreement and Attachment A and other conduct under investigation by the Department that has commenced before or during the term specified in paragraph 3, subject to applicable law and regulations, until the date upon which all investigations and prosecutions arising out of such conduct are concluded, whether or not those investigations and prosecutions are conducted within the term specified in Paragraph 3, or until further agreement with the Department.  At the request of the Department, and subject to applicable law and regulations, Deutsche Bank shall also cooperate fully with other domestic or foreign law enforcement authorities and agencies in any investigation of Deutsche Bank or any of its present and former officers, directors, employees, and agents, or any other party, in any and all matters relating to the conduct described in this Agreement and Attachment A.  Deutsche Bank agrees that such cooperation shall include, but is not limited to, the following:

a.    Deutsche Bank shall truthfully disclose all factual information not protected by a valid claim of the attorney-client privilege, work product doctrine, or any other applicable privilege or legal protection against disclosure with respect to its activities, and those of its present and former directors, officers, employees, and agents concerning all matters relating to the conduct described in this Agreement and Attachment A and other conduct under investigation by the Department about which Deutsche Bank has any knowledge or about which the Department may inquire.  This obligation of truthful disclosure includes the obligation of Deutsche Bank to provide to the Department, upon request and subject to applicable law and regulations, any document, record or other tangible evidence relating to the conduct described in this Agreement and Attachment A and other conduct under investigation by the Department about which the Department may inquire of Deutsche Bank.

b.    Upon request of the Department, with respect to any issue relevant to its investigation of the conduct described in this Agreement and Attachment A and other conduct under investigation by the Department, Deutsche Bank shall designate knowledgeable employees, agents or attorneys to provide to the Department the information and materials described in Paragraph

5(a) above on behalf of Deutsche Bank.  It is further understood that Deutsche Bank must at all times provide complete, truthful, and accurate information.

     c.   With respect to any issue relevant to the Department's investigation of the conduct described in this Agreement and Attachment A and other conduct under investigation by the Department, Deutsche Bank shall use its best efforts to make available for interviews or testimony, as requested by the Department, present or former officers, directors, employees and agents of Deutsche Bank.  This obligation includes, but is not limited to, sworn testimony before grand juries or in trials, as well as interviews with law enforcement and regulatory authorities.  Cooperation under this Paragraph shall include identification of witnesses who, to the knowledge of Deutsche Bank, may have material information regarding the matters under investigation.

     d.   With respect to any information, testimony, documents, records or other tangible evidence provided to the Department pursuant to this Agreement, Deutsche Bank consents to any and all disclosures, subject to applicable law and regulations, to other governmental authorities, including United States authorities and those of a foreign government, of such

10

materials as the Department, in its sole discretion, shall deem appropriate.

6.    In addition to the obligations in Paragraph 5, during the Term of the Agreement, should Deutsche Bank discover any evidence or allegations of manipulation, attempted manipulation, or interbank coordination of benchmark rate submissions not otherwise disclosed, or similar misconduct not otherwise disclosed, including through internal or external investigations, Deutsche Bank shall, subject to applicable law and regulations, promptly report such evidence or allegations to the Department.

## Payment of Monetary Penalty

7.    The Department and Deutsche Bank agree that Deutsche Bank, by its branch in New York, will pay a monetary penalty in the amount of $625,000,000 to the United States Treasury. Deutsche Bank must pay this sum within ten (10) days of the execution of this Agreement.  Deutsche Bank and the Department agree that this penalty is appropriate given the facts and circumstances of this case, including the nature and extent of Deutsche Bank's cooperation, internal investigation, and remediation in this matter, as well as the monetary penalties Deutsche Bank has agreed to pay to other criminal and regulatory enforcement authorities in the United Kingdom and the United

States relating to the same conduct at issue in this case. The $625,000,000 penalty is final and shall not be refunded. Furthermore, nothing in this Agreement shall be deemed an agreement by the Department that $625,000,000 is the maximum penalty that may be imposed in any future prosecution in the event of a breach of this Agreement, and the Department is not precluded from arguing in any future prosecution that the Court should impose a higher penalty, although the Department agrees that under those circumstances, it will recommend to the Court that any amount paid under this Agreement should be offset against any fine the Court imposes as part of a future judgment. Deutsche Bank acknowledges that no tax deduction may be sought in the United States, the United Kingdom, Germany, or elsewhere in connection with the payment of any part of this $625,000,000 penalty.

## Conditional Release from Liability

8.   In return for the full and truthful cooperation of Deutsche Bank, and its compliance with the other terms and conditions of this Agreement, the Department agrees, subject to Paragraphs 13-16 below, not to use any information related to the conduct described in the attached Statement of Facts, or the conduct Deutsche Bank disclosed to the Department relating to USD LIBOR, EURIBOR, GBP LIBOR, Yen LIBOR, CHF LIBOR, and Euroyen

TIBOR, prior to the signing of this Agreement, against Deutsche Bank in any criminal or civil case, except:  (a) in a prosecution for perjury or obstruction of justice; (b) in a prosecution for making a false statement; or (c) in a prosecution or other proceeding relating to a violation of any provision of Title 26 of the United States Code.  In addition, the Department agrees, except as provided herein, that it will not bring any criminal case against Deutsche Bank related to the conduct of present and former officers, directors, employees, shareholders, or agents, as described in this Agreement and Attachment A or as disclosed to the Department prior to the signing of this Agreement.

  a. This Paragraph does not provide any protection against prosecution for conduct not disclosed by Deutsche Bank to the Department prior to the date on which this Agreement was signed, nor does it provide protection against prosecution for any future involvement by Deutsche Bank in criminal activity, including any future manipulation or attempted manipulation or interbank coordination of benchmark rate submissions.

  b. In addition, this Paragraph does not provide any protection against prosecution of any present or former officer, director, employee, shareholder or agent of Deutsche Bank.

## Current IBOR Compliance Program

9.    Deutsche Bank represents that it has implemented and will continue to implement a compliance program designed to prevent and detect manipulation and interbank coordination of benchmark rate submissions throughout its operations. Implementation of these policies and procedures shall not be construed in any future enforcement proceeding as providing immunity or amnesty for any crimes not disclosed to the Department as of the date of this Agreement for which Deutsche Bank would otherwise be responsible.

10.   It is further understood that, as noted above, Deutsche Bank has strengthened its compliance and internal controls standards and procedures, and that it will further strengthen them as recommended by the Monitor discussed below as well as required by the CFTC, the FCA, Federal Financial Supervisory Authority ("BaFin"), the Japanese Financial Services Agency ("JFSA"), the European Central Bank ("ECB") and any other regulatory or enforcement agencies that have addressed the misconduct set forth in the attached Statement of Facts.  It is further understood that Deutsche Bank will report to the Department, upon request, and subject to applicable law and regulations, regarding its remediation and implementation of any compliance program and internal controls, policies, and

14

procedures that relate to its submission of benchmark rates.
Moreover, Deutsche Bank agrees, subject to applicable law and
regulations, that it has no objection to any regulatory agencies
providing to the Department any information or reports generated
by such agencies or Deutsche Bank relating to the submissions of
benchmark rates.  Such information and reports will likely
include proprietary, financial, confidential, and competitive
business information.  Moreover, public disclosure of the
information and reports could discourage cooperation, impede
pending or potential government investigations, and thus
undermine the Department's objectives in obtaining such reports.
For these reasons, among others, the information and reports and
the contents thereof are intended to remain and shall remain
nonpublic, except as otherwise agreed to by the parties in
writing, or except to the extent that the Department determines
in its sole discretion that disclosure would be in furtherance
of the Department's discharge of its duties and responsibilities
or is otherwise required by law.

### Independent Compliance Monitor

11.  Promptly after the Department's selection pursuant to
Paragraph 13 below, Deutsche Bank agrees to retain an
independent compliance monitor (the "Monitor") for the term
specified in Paragraph 14.  The Monitor's duties and authority,

and the obligations of Deutsche Bank with respect to the Monitor and the Department, are set forth in Attachment C, which is incorporated by reference into this Agreement.  Within thirty (30) calendar days after the execution of this Agreement, and after consultation with the Department, Deutsche Bank will propose to the Department a pool of three (3) qualified candidates to serve as the Monitor.  If the Department determines, in its sole discretion, that any of the candidates are not, in fact, qualified to serve as the Monitor, or if the Department, in its sole discretion, is not satisfied with the candidates proposed, the Department reserves the right to seek additional nominations from Deutsche Bank.  The Monitor candidates or their team members shall have, at a minimum, the following qualifications:

      a.   demonstrated expertise with respect to United States criminal fraud and antitrust laws and regulations;

      b.   demonstrated expertise with respect to corporate compliance and ethics within the banking industry, including experience counseling on these issues;

      c.   experience designing and/or reviewing corporate compliance policies, procedures and internal controls;

    d.   the ability to access and deploy resources as necessary to discharge the Monitor's duties as described in the Agreement and Attachment C; and

    e.   sufficient independence from Deutsche Bank to ensure effective and impartial performance of the Monitor's duties as described in the Agreement.

12.  The Department retains the right, in its sole discretion, to choose the Monitor from among the candidates proposed by Deutsche Bank, though Deutsche Bank may express its preference(s) among the candidates.  In the event the Department rejects all proposed Monitors, Deutsche Bank shall propose an additional three candidates within thirty (30) calendar days after receiving notice of the rejection.  This process shall continue until a Monitor acceptable to both parties is chosen. The Department and Deutsche Bank will use their best efforts to complete the selection process within sixty (60) calendar days of the filing of the Agreement and the accompanying Information. If the Monitor resigns or is otherwise unable to fulfill his or her obligations as set out herein and in Attachment C, Deutsche Bank shall within thirty (30) calendar days recommend a pool of three qualified Monitor candidates from which the Department will choose a replacement.

13.  The Monitor's term shall be three (3) years from the date on which the Monitor is retained by Deutsche Bank, subject to extension or early termination as described in Paragraph 3. The Monitor's powers, duties, and responsibilities, as well as additional circumstances that may support an extension of the Monitor's term, are set forth in Attachment C.  Deutsche Bank agrees that it will not employ or be affiliated with the Monitor for a period of not less than three (3) years from the date on which the Monitor's term expires.  Nor will Deutsche Bank discuss with the Monitor the possibility of further employment or affiliation during the Monitor's term.

### Deferred Prosecution

14.  In consideration of:  (a) the past and future cooperation of Deutsche Bank described in Paragraphs 4-6 above; (b) Deutsche Bank's payment of a criminal penalty of $625,000,000; and (c) Deutsche Bank's implementation and maintenance of remedial measures as described in Paragraph 4 above, the Department agrees that any prosecution of Deutsche Bank for the conduct set forth in the attached Statement of Facts, and for the conduct that Deutsche Bank disclosed to the Department prior to the signing of this Agreement, be and hereby is deferred for the Term of this Agreement.

18

15.  The Department further agrees that if Deutsche Bank fully complies with all of its obligations under this Agreement, the Department will not continue the criminal prosecution against Deutsche Bank described in Paragraph 1 and, at the conclusion of the Term, this Agreement shall expire.  Within thirty (30) days of the Agreement's expiration, the Department shall seek dismissal with prejudice of the criminal Information filed against Deutsche Bank described in Paragraph 1.

### Breach of the Agreement

16.  If, during the Term of this Agreement, the Department determines, in its sole discretion, that Deutsche Bank has (a) committed any felony under U.S. federal law subsequent to the signing of this Agreement, (b) at any time provided in connection with this Agreement deliberately false, incomplete, or misleading information, or (c) otherwise breached the Agreement, Deutsche Bank shall thereafter be subject to prosecution for any federal criminal violation of which the Department has knowledge, including the charges in the Information described in Paragraph 1, which may be pursued by the Department in the U.S. District Court for the District of Connecticut or any other appropriate venue.  By signing this Agreement, Deutsche Bank agrees to waive any objection as to venue and that any such prosecution by the Department could be

19

filed and brought in the District of Connecticut or any other appropriate venue.  Any such prosecution may be premised on information provided by Deutsche Bank.  Any such prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against Deutsche Bank notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the expiration of the Term plus one year.  Thus, by signing this Agreement, Deutsche Bank agrees that the statute of limitations with respect to any such prosecution that is not time-barred on the date of the signing of this Agreement shall be tolled for the Term plus one year.

17.  In the event that the Department determines that Deutsche Bank has breached this Agreement, the Department agrees to provide Deutsche Bank with written notice of such breach prior to instituting any prosecution resulting from such breach. Deutsche Bank shall, within thirty (30) days of receipt of such notice, have the opportunity to respond to the Department in writing to explain the nature and circumstances of such breach, as well as the actions Deutsche Bank has taken to address and remediate the situation, which explanation the Department shall consider in determining whether to institute a prosecution.

18.   In the event that the Department determines that
Deutsche Bank has breached this Agreement:  (a) all statements
made by or on behalf of Deutsche Bank to the Department or to
the Court, including the attached Statement of Facts, and any
testimony given by Deutsche Bank before a grand jury, a court,
or any tribunal, or at any legislative hearings, whether prior
or subsequent to this Agreement, and any leads derived from such
statements or testimony, shall be admissible in evidence in any
and all criminal proceedings brought by the Department against
Deutsche Bank; and (b) Deutsche Bank shall not assert any claim
under the United States Constitution, Rule 11(f) of the Federal
Rules of Criminal Procedure, Rule 410 of the Federal Rules of
Evidence, or any other federal law or rule that statements made
by or on behalf of Deutsche Bank prior or subsequent to this
Agreement, or any leads derived therefrom, should be suppressed.
The decision whether conduct or statements of any current
director or employee, or any person acting on behalf of, or at
the direction of, Deutsche Bank will be imputed to Deutsche Bank
for the purpose of determining whether Deutsche Bank has
violated any provision of this Agreement shall be in the sole
discretion of the Department.

19.   Deutsche Bank acknowledges that the Department has
made no representations, assurances, or promises concerning what

sentence may be imposed by the Court if Deutsche Bank breaches this Agreement and this matter proceeds to judgment. Deutsche Bank further acknowledges that any such sentence is solely within the discretion of the Court and that nothing in this Agreement binds or restricts the Court in the exercise of such discretion.

### Sale or Merger of Deutsche Bank

20. Deutsche Bank agrees that in the event it sells, merges, or transfers all or substantially all of its business operations as they exist as of the date of this Agreement, whether such sale is structured as a sale, asset sale, merger, or transfer, it shall include in any contract for sale, merger, or transfer a provision binding the purchaser, or any successor in interest thereto, to the obligations described in this Agreement.

### Public Statements by Deutsche Bank

21. Deutsche Bank expressly agrees that it shall not, through present or future attorneys, officers, directors, employees, agents or any other person authorized to speak for Deutsche Bank or its subsidiaries or affiliates, make any public statement, in litigation or otherwise, contradicting the acceptance of responsibility by Deutsche Bank set forth above or the facts described in the attached Statement of Facts. Any

such contradictory statement shall, subject to cure rights of
Deutsche Bank described below, constitute a breach of this
Agreement and Deutsche Bank thereafter shall be subject to
prosecution as set forth in Paragraphs 13-16 of this Agreement.
The decision whether any public statement by any such person
contradicting a fact contained in the Statement of Facts will be
imputed to Deutsche Bank for the purpose of determining whether
it has breached this Agreement shall be at the sole discretion
of the Department.  If the Department determines that a public
statement by any such person contradicts in whole or in part a
statement contained in the Statement of Facts, the Department
shall so notify Deutsche Bank, and Deutsche Bank may avoid a
breach of this Agreement by publicly repudiating such
statement(s) within five (5) business days after notification.
Deutsche Bank shall be permitted to raise defenses, take legal
positions, and to assert affirmative claims in other proceedings
relating to the matters set forth in the Statement of Facts
provided that such defenses, positions, and claims do not
contradict, in whole or in part, a statement contained in the
Statement of Facts.  This Paragraph does not apply to any
statement made by any present or former officer, director,
employee, or agent of Deutsche Bank in the course of any
criminal, regulatory, or civil case initiated by or against such

23

individual, unless such individual is speaking on behalf of
Deutsche Bank.

22.   Deutsche Bank agrees that if it or any of its direct
or indirect subsidiaries or affiliates issues a press release or
holds any press conference in connection with this Agreement,
Deutsche Bank shall first consult the Department to determine
(a) whether the text of the release or proposed statements at
the press conference are true and accurate with respect to
matters between the Department and Deutsche Bank; and (b)
whether the Department has any objection to the release.
Statements at any press conference concerning this matter shall
not be inconsistent with such a press release.

23.   The Department agrees, if requested to do so, to bring
to the attention of governmental and other debarment authorities
the facts and circumstances relating to the nature of the
conduct underlying this Agreement, including the nature and
quality of Deutsche Bank's cooperation and remediation.  By
agreeing to provide this information to debarment authorities,
the Department is not agreeing to advocate on behalf of Deutsche
Bank, but rather is agreeing to provide facts to be evaluated
independently by the debarment authorities.

## Limitations on Binding Effect of Agreement

24.   This Agreement is binding on Deutsche Bank and the Department but specifically does not bind any other federal agencies, or any state, local or foreign law enforcement or regulatory agencies, or any other authorities, although the Department will bring the cooperation of Deutsche Bank and its compliance with its other obligations under this Agreement to the attention of such agencies and authorities if requested to do so by Deutsche Bank.

## Notice

25.   Any notice to the Department under this Agreement shall be given by personal delivery, overnight delivery by a recognized delivery service, or registered or certified mail, addressed to the Deputy Chief - Securities and Financial Fraud Unit, Fraud Section, Criminal Division, U.S. Department of Justice, Third Floor, 1400 New York Avenue, NW, Washington, DC 20530, and the Director of Criminal Enforcement, Antitrust Division, U.S. Department of Justice, 950 Pennsylvania Avenue, NW, Room 3211, Washington, DC 20530.  Any notice to Deutsche Bank under this Agreement shall be given by personal delivery, overnight delivery by a recognized delivery service, or registered or certified mail, addressed to Roberto Finzi and Andrew Finch, Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285

Avenue of the Americas, New York, NY 10019-6064.  Notice shall
be effective upon actual receipt by the Department or Deutsche
Bank.

## Complete Agreement

26.  This Agreement sets forth all the terms of the
agreement between Deutsche Bank and the Department.  No
amendments, modifications or additions to this Agreement shall
be valid unless they are in writing and signed by the
Department, the attorneys for Deutsche Bank and a duly
authorized representative of Deutsche Bank.

AGREED:

DEUTSCHE BANK AG:

Date: April 23, 2015       By: _____

                               Christian Sewing
                               Member, Management Board

                               Head of Legal, Incident Management
                               Group and Group Audit


Date: _____      By: _____
                               Roberto Finzi, Esq.
                               Andrew Finch, Esq.
                               Theodore V. Wells, Jr., Esq.
                               Paul, Weiss, Rifkind, Wharton &
                               Garrison LLP

26

Avenue of the Americas, New York, NY 10019-6064.  Notice shall be effective upon actual receipt by the Department or Deutsche Bank.

## Complete Agreement

26.  This Agreement sets forth all the terms of the agreement between Deutsche Bank and the Department.  No amendments, modifications or additions to this Agreement shall be valid unless they are in writing and signed by the Department, the attorneys for Deutsche Bank and a duly authorized representative of Deutsche Bank.

**AGREED:**

DEUTSCHE BANK AG:

Date: _____     By: _____

                                   Christian Sewing
                                   Member, Management Board

                                   Head of Legal, Incident Management
                                   Group and Group Audit

Date: 4/23/15     By: _____

                                   Roberto Finzi, Esq.
                                   Andrew Finch, Esq.
                                   Theodore V. Wells, Jr., Esq.
                                   Paul, Weiss, Rifkind, Wharton &
                                   Garrison LLP

26

**FOR THE DEPARTMENT OF JUSTICE, Criminal Division, Fraud Section:**

ANDREW WEISSMANN
Chief, Fraud Section
Benjamin D. Singer
Deputy Chief, Fraud Section
Criminal Division
United States Department of Justice

Date: 4/23/15          By: _____
                           Jennifer L. Saulino
                           Assistant Chief, Fraud Section

Date: 4/23/15          By: _____
                           Alison L. Anderson
                           Trial Attorney, Fraud Section


**FOR THE DEPARTMENT OF JUSTICE, Antitrust Division:**

JEFFREY D. MARTINO
Chief, New York Field Office
Antitrust Division
United States Department of Justice

Date: 4/23/15          By: _____
                           Richard A. Powers
                           Trial Attorney, Antitrust Division

27

## COMPANY OFFICER'S CERTIFICATE

I have read this Agreement and carefully reviewed every part of it with outside counsel for Deutsche Bank AG ("Deutsche Bank"). I understand the terms of this Agreement and voluntarily agree, on behalf of Deutsche Bank, to each of its terms. Before signing this Agreement, I consulted outside counsel for Deutsche Bank. Counsel fully advised me of the rights of Deutsche Bank, of possible defenses, of the Sentencing Guidelines' provisions, and of the consequences of entering into this Agreement.

I understand that outside counsel for Deutsche Bank has advised the Management Board fully of the rights of Deutsche Bank, of possible defenses, of the Sentencing Guidelines' provisions, and of the consequences of entering into the Agreement.

No promises or inducements have been made other than those contained in this Agreement. Furthermore, no one has threatened or forced me, or to my knowledge any person authorizing this Agreement on behalf of Deutsche Bank, in any way to enter into this Agreement. I am also satisfied with outside counsel's representation in this matter. I certify that I am a Member of the Management Board and Head of Legal, Incident Management Group and Group Audit for Deutsche Bank AG and that I have been

28

duly authorized by Deutsche Bank AG to execute this Agreement on

behalf of Deutsche Bank AG.


Date: April     , 2015

                              Deutsche Bank AG



                        By: _____

                              Christian Sewing
                              Member, Management Board

                              Head of Legal, Incident Management
                              Group and Group Audit

29

## CERTIFICATE OF COUNSEL

We are counsel for Deutsche Bank AG ("Deutsche Bank") in the matter covered by this Agreement.  In connection with such representation, we have examined relevant Deutsche Bank documents and have fully advised Deutsche Bank's Management Board of the terms of this Agreement.  Based on our review of the foregoing materials and discussions, we are of the opinion that the representative of Deutsche Bank has been duly authorized to enter into this Agreement on behalf of Deutsche Bank and that this Agreement has been duly and validly authorized, executed, and delivered on behalf of Deutsche Bank and is a valid and binding obligation of Deutsche Bank.

Further, we have carefully reviewed the terms of this Agreement with representatives of the Management Board and Christian Sewing, a Member of the Management Board and the Head of Legal, Incident Management Group and Group Audit for Deutsche Bank AG.  We have fully advised them of the rights of Deutsche Bank, of possible defenses, of the Sentencing Guidelines' provisions and of the consequences of entering into this Agreement.  To our knowledge, the decision of Deutsche Bank to enter into this Agreement, based on the authorization of the Management Board, is an informed and voluntary one.

Date: April 23, 2015

By: _____
Roberto Finzi, Esq.
Paul, Weiss, Rifkind, Wharton & Garrison LLP
Counsel for Deutsche Bank


By: _____
Andrew Finch, Esq.
Paul, Weiss, Rifkind, Wharton & Garrison LLP
Counsel for Deutsche Bank


By: _____
Theodore V. Wells, Jr., Esq.
Paul, Weiss, Rifkind, Wharton & Garrison LLP
Counsel for Deutsche Bank